**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JAMES C MOONEY,<br>Plaintiff,<br><br>v.<br><br>AINSWORTH, INC. *et al.*,<br>Defendants. | :<br>:<br>:<br>:<br>:<br>:<br>: | Civil No.: 5:25-cv-03598-JMG |

**MEMORANDUM OPINION**

**GALLAGHER, J.** **October 14, 2026**

## I. OVERVIEW

This case originally arose from Defendants Ainsworth, Inc.'s ("Ainsworth") and GDI Integrated Facility Services, Inc.'s ("GDI") (collectively, "Defendants") alleged failure to pay Plaintiff James C. Mooney, in his Capacity as the Representative of the Former Members of Enginuity LLC ("Sellers"), pursuant to the terms of a Membership Interest Purchase Agreement ("MIPA"). Plaintiff hired an expert, Brad Steinweg, to provide expert testimony in the case. Defendants moved to exclude Mr. Steinweg's opinion.

## II. BACKGROUND

On September 1, 2021, the Sellers[1] of Enginuity, LLC ("Enginuity") entered into the MIPA

---

[1] James C. Mooney is acting as representative of the "Sellers" which consists of all members of Enginuity who held Class A Common Units ("A Members") and all members of the Company who were not A Members but who held Class B Common Units. *See* ECF No. 91-1, at 1.

with Defendant Ainsworth[2] in which Ainsworth purchased all the Company Units of Enginuity as of the Closing Date. *See* ECF No. 91-1, at 1. The MIPA provides that the "Closing Date" is the date of execution of the MIPA which is September 1, 2021. *See id.*

After the Closing Date, the MIPA required Defendants to pay three separate Balance of Sale (BOS) Payments. The MIPA required Defendants to pay i) $2,250,000 ("First BOS Payment") one year after the Closing Date ("First Period"), ii) $2,250,000 ("Second BOS Payment") two years after the Closing Date ("Second Period"), and iii) $2,150,000 ("Third BOS Payment") three years after the Closing Date ("Third Period"). *See* ECF No. 91-1, at 2. However, these payments are adjusted based on an "Adjusted EBITDA" for each relevant annual period. *See id.* at 2-3. If the Adjusted EBITDA is below specific target, then the BOS payment for that period is reduced. *See id.* The MIPA further states that after the Closing Date, Ainsworth shall control Enginuity "provided that until the end of the Third Period, [Ainsworth] shall not, and shall cause its Affiliates not to, . . . (ii) make changes in the Company that would materially affect its ability to achieve the applicable target Adjusted EBITDA." *See id.* at 3-4.

Plaintiff alleges that Defendants have not paid the Second and Third BOS Payments. *See* Plaintiff's Complaint ("Compl.") (ECF No. 1), at 55. Plaintiff alleges that Defendants' refusal to pay is based on Defendants' miscalculations of the EBIDTA for the Second and Third Periods. *See id.* at 46-49. Plaintiff further alleges that Enginuity's ability to meet the EBIDTA for the Second and Third Periods was "materially affected" by Ainsworth's changes to Enginuity and failure to follow generally accepted accounting principles (GAAP). *See id.* at 50-54. Plaintiff hired an expert, Brad Steinweg to analyze the relevant financial records and accounting issues. Pl. Mem.

[2] According to the MIPA, Defendant Ainsworth is an indirect wholly owned subsidiary of Defendant GDI and GDI agreed to act a payment guarantor for Ainsworth under the agreement. *See* ECF No. 91-1, at 1, 49.

of Law in Opp. to Defs.'s Mot. to Exclude the Opinions and Testimony of Pl.'s Proposed Expert ("Resp. Br."), at 2 (ECF No. 91). Mr. Steinweg completed a final report dated June 2, 2026 which details his findings, materials considered and qualifications. *See* ECF No. 91-3. He also completed a supplemental report dated July 2, 2026. *See* ECF No. 91-4.

Mr. Steinweg earned his Bachelor of Science in Accounting from Messiah University. *See* ECF No. 91-2. Since October 2023, Mr. Steinweg has worked for RKL, LLP as a Senior Manager in their consulting services group. *See id.* Mr. Steinweg joined RKL in 2018 as an Audit Senior Associate and has additionally served as an Audit Manager and Senior Consultant before starting as a Senior Manager. *See id.* Prior to joining RKL, Mr. Steinweg was an Assurance Associate at PricewaterhouseCoopers LLP from 2015 to 2018. *See id.*

Mr. Steinweg is a Certified Public Accountant (CPA), licensed in Pennsylvania. *See id.* He additionally holds certifications as a Certified Valuation Analyst (CVA) and a Certified Fraud Examiner (CFE). *See id.* Mr. Steinweg is also a member several professional organizations including the American Institute of Certified Public Accountants (AICPA), the Pennsylvania Institute of Certified Public Accountants (PICPA), the National Association of Certified Valuation Analysts (NACVA) and the Association of Certified Fraud Examiners (ACFE). *See id.*

## III. LEGAL STANDARD

"Under the Federal Rules of Evidence, a trial judge acts as a gatekeeper to ensure that any and all expert testimony or evidence is not only relevant, but also reliable." *Pineda v. Ford Motor Co.*, 520 F.3d 237, 243 (3d Cir. 2008) (internal quotations omitted). "Rule 702 has a liberal policy of admissibility," so long as an expert meets the requirements of qualification, reliability, and fit. *Nat'l Fire & Marine Ins. Co. v. Newtown Square, LLC*, No. CV 21-5397, 2024 WL 1683609, at *2 (E.D. Pa. Apr. 18, 2024) (citing *Kannankeril v. Terminix Int'l, Inc.,* 128 F.3d 802, 806 (3d Cir.

1997), *as amended* (Dec. 12, 1997)); *J.L. v. Lower Merion Sch. Dist.*, No. CV 20-1416-KSM, 2024 WL 5227410, at *3 (E.D. Pa. Dec. 26, 2024).

Rule 702 was amended in 2023 and currently reads:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

FED. R. EVID. 702. The text of Rule 702 has not been substantively altered other than to clarify that "the party proposing the expert witness must show that each prong [of admissibility]—qualification, reliability, and fit—is satisfied by a preponderance of proof." *Lower Merion Sch. Dist.*, 2024 WL 5227410, at *4; *Johnson v. Comodo Group, Inc.*, No. CV 2:16-04469, 2024 WL 2933195, at *4 n.6 (D.N.J. June 10, 2024); *Power v. Hewlett-Packard Co.*, No. 2:17-CV-00154, 2024 WL 4040432, at *3 (W.D. Pa. July 19, 2024). The amendment also "emphasizes that a court must evaluate the reliability of an expert's conclusions drawn from his or her methodology, not just the methodology itself." *Power*, 2024 WL 4040432, at *4.

***First***, the Court must evaluate the expert's qualifications. *See UGI Sunbury LLC v. A Permanent Easement for 1.7575 Acres*, 949 F.3d 825, 832 (3d Cir. 2020). A witness is qualified if the witness has "specialized expertise" in the testimony's subject matter. *Schneider ex rel. Est. of Schneider v. Fried*, 320 F.3d 396, 404 (3d Cir. 2003). A "broad range of knowledge, skills and training" can make an expert qualified. *Phila. Tr. Co. v. Temple Univ. Hosp., Inc.*, No. 2:21-CV-03413, 2024 WL 5057595, at *2 (E.D. Pa. Dec. 9, 2024) (internal quotations omitted*); see Pineda*,

520 F.3d at 244. This is admittedly a low bar, even with the recent amendment to Rule 702. *See Phila. Tr. Co.*, 2024 WL 5057595, at *2. The specialized expertise or knowledge required can come from "practical experience as well as academic training and credentials." *Id.* (internal quotations omitted).

***Second***, the Court must assess the ***reliability*** of the expert's testimony. *See UGI Sunbury LLC*, 949 F.3d at 832. "Rule 702's reliability threshold requires expert testimony to be based on the ***methods*** and procedures of science." *Id.* at 833-34 (internal quotations omitted) (emphasis added). In other words, the expert must use a reliable technique or process to form the basis of their opinion, which is what courts refer to as "good grounds." *Karlo v. Pittsburgh Glass Works, LLC*, 849 F.3d 61, 80-81 (3d Cir. 2017); *Pineda*, 520 F.3d at 247. "[A]n expert's testimony is admissible so long as the process or technique the expert used in forming the opinion is reliable." *Lower Merion Sch. Dist.*, 2024 WL 5227410, at *4 (quoting *Pineda*, 520 F.3d at 244) (other citation omitted). "[I]f the court finds it more likely than not that an expert has a sufficient basis to support an opinion, the fact that the expert has not read every single study that exists will raise a question of weight and not admissibility." FED. R. EVID. 702 advisory committee's note to 2023 amendment. But "[s]peculation does not cut it." *Slatowski v. Sig Sauer, Inc.*, 148 F.4th 132, 138 (3d Cir. 2025).

The reliability requirement makes certain that "an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the field." *Lower Merion Sch. Dist.*, 2024 WL 5227410, at *7 (quoting *Keller v. Feasterville Fam. Health Care Ctr.*, 557 F. Supp. 2d 671, 676 (E.D. Pa. 2008)). In making this determination, courts are encouraged to evaluate:

> (1) whether a method consists of a testable hypothesis;
> (2) whether the method has been subject to peer review;

> (3) the known or potential rate of error;
> (4) the existence and maintenance of standards controlling the technique's operation;
> (5) whether the method is generally accepted;
> (6) the relationship of the technique to methods which have been established to be reliable;
> (7) the qualifications of the expert witness testifying based on the methodology; and
> (8) the non-judicial uses to which the method has been put.

*Cohen v. Cohen*, 125 F.4th 454, 462 (3d Cir. 2025) (quoting *UGI Sunbury*, 949 F.3d at 834).

***Third***, the Court must determine whether the expert's testimony "fits" the case. *See UGI Sunbury LLC*, 949 F.3d at 832. An expert witness's testimony fits a case only if it more likely than not "will ***help the trier of fact*** to understand the evidence or to determine a fact in issue." FED. R. EVID. 702(a) (emphasis added); *UGI Sunbury LLC*, 949 F.3d at 835. "The fit requirement ensures that there is a sufficient nexus between the expert's testimony and the facts that the jury is being asked to consider." *Bradley v. Amazon.com, Inc.*, No. CV 17-1587, 2023 WL 2574572, at *4 (E.D. Pa. Mar. 17, 2023), *reconsideration denied*, 2023 WL 2843788 (E.D. Pa. Apr. 6, 2023) (internal quotation marks and citations omitted). "Put another way, this is a question of relevance, and Rule 702, which governs the admissibility of expert testimony, has a liberal policy of admissibility if it has the potential for assisting the trier of fact." *United States v. Schiff*, 602 F.3d 152, 173 (3d Cir. 2010) (internal quotation marks and citations omitted); *see United States v. Ford*, 481 F.3d 215, 219 n.6 (3d Cir. 2007) (explaining fit is primarily a "relevance concern"). But the "testimony will be excluded if it is not scientific knowledge ***for purposes of the case***." *Cohen*, 125 F.4th at 464 (quoting *UGI Sunbury*, 949 F.3d at 835) (emphasis in original).

## IV. ANALYSIS

### a. Qualification

Courts first must consider whether a witness is qualified to offer an expert opinion. Defendants argue that Mr. Steinweg is not qualified to offer opinions on forensic accounting in

this case. Defendants provide two primary reasons for this position: first, that Mr. Steinweg previously denied being an expert in forensic accounting and second, that an attorney from Plaintiff's counsel's firm previously sought to preclude expert testimony from Mr. Steinweg. *See* Defs. Mem. Of Law. In Supp. of Mot. to Exclude Opinions and Testimony of Pl.'s Proposed Expert ("Defs. Br."), at 4-7 (ECF No. 84-1)[3].

Regarding its first argument, Defendants direct the Court to testimony Mr. Steinweg gave in an Adams County Court of Common Pleas case, *In re Estate of Donald F. Toft, Jr*. *See Defs*. Br., at 5. There, Mr. Steinweg testified, as follows:

> Q. Okay. Do you claim to be an expert in forensic accounting?
>
> A. No.
>
> Q. Okay.
>
> A. As far as, I guess, the CFE goes, I do not have a CFE.
>
> Q. But I was first asking you whether you claim to be an expert in forensic accounting?
>
> A. No.

*See* ECF No. 80-5, at 248:15-25.

[3] Defendants originally filed Motion to Exclude and its memorandum of law supporting its motion on August 10, 2026 (ECF No. 80), which was the due date for any such motion under this Court's Fifth Amended Scheduling Order. *See* ECF No. 62, at 2. One day later, Defendants filed a "Praecipe to Substitute" its previously filed memorandum of law with a corrected version. *See* ECF No. 84. Defendants represent that this corrected version correct typographical errors and an inadvertent formatting error in the Table of Contents and that no substantive changes were made. Defendants' "corrected" response is untimely and Defendants did not seek leave to amend their original response. The Court would be within its rights to refuse to consider this untimely submission. Nonetheless, because the two responses are not substantively different, and in the interest of a more complete record, the Court will consider it. Any citations made in this Memorandum to Defendants' Memorandum of Law in Support of its Motion to Exclude the Opinions and Testimony of Plaintiff's Proposed Expert are made to the corrected version filed on August 11, 2026 as ECF No. 84-1 unless otherwise noted.

Defendants also direct the Court to the finding of facts in the *Toft* case where the court stated "The Court gives no weight to the testimony of Brad Steinweg. His opinions are not supported by the evidence in this case." *See* ECF No. 80-6, at 9.

Plaintiff argues that the *Toft* case was the first in which Mr. Steinweg testified as an expert and further note that, even there, the court did not find Mr. Steinweg unqualified to provide an expert opinion but rather found his testimony not adequately supported by the facts. Pl. Resp. Br., at 9.

The Court agrees with Plaintiff. Even if Mr. Steinweg's opinions were precluded in the *Toft* case – which they was not – Plaintiff is correct that such a finding would not require this Court to do the same. And with good reason. Neither party has provided the Court with details about Mr. Steinweg's expert testimony in the *Toft* beyond a single page of his testimony. The Court does not know the context of Mr. Steinweg's testimony in that case and has no way of knowing whether Mr. Steinweg's testimony and expert opinion in that case provide any analogous facts to the instant case.[4]

Nor are Defendants correct that the Court should give weight to arguments by Platiniff's counsel's firm in a prior, unrelated case. Defendants argue that an attorney from Barley Snyder LLP – the law firm representing Plaintiff – filed a motion for summary judgment in a Middle District of Pennsylvania case in which counsel from Barley Snyder challenged Mr. Steinweg's report. *See* Defs. Br., at 6. In that case, counsel from Barley Snyder stated, for example, that Mr. Steinweg's opinions were "at a minimum, imprecise," failed to consider certain facts and ignored

[4] It is also worth noting that Mr. Steinweg's testimony in the *Toft* case that he was not an expert in forensic accounting appears to be limited to the idea that he did not have a "CFE." *See* ECF No. 80-5, at 248:15-25. This is seemingly referring to whether he obtained as certification as a Certified Fraud Examiner. While it is unclear when he obtained this certification, Mr. Steinweg is now a CFE according to his resume. *See* ECF No. 91-2, at 1.

records and nuances. *See* Defs. Br., at 6. Plaintiff argues the Middle District of Pennsylvania case involves completely different facts and issues, and that, even in that case, Magistrate Judge Carlson found that the issues raised were not proper grounds for summary judgment. *See* Pl. Resp. Br., at 10-11. The Court agrees with Plaintiff that opinions made by counsel in a separate case, involving separate facts do not demonstrate that Mr. Steinweg is unqualified to testify here.

Turning to Mr. Steinweg's actual credentials, he holds a Bachelor of Science in Accounting and is a Certified Public Accountant, with additional certifications as a Certified Valuation Analyst and Certified Fraud Examiner. *See* ECF 91-2, at 1. He has years of experience in the accounting field and has served as a qualified expert in cases across the Commonwealth. *See id.* at 2. Accordingly, the Court finds Mr. Steinweg qualified to offer an expert opinion.

**b. Reliability**

Regarding the "reliability" of Mr. Steinweg's opinions, courts are required to consider whether the process or technique used by the expert in forming his opinions is reliable. *See Lower Merion Sch. Dist.*, 2024 WL 5227410, at *4.

Mr. Steinweg purports to have conducted his analysis in accordance with the "Statement on Standards for Consulting Services" and "Statement on Standards for Forensic Services No. 1". *See* ECF No. 91-2, at 3. Defendants do not appear to dispute the methods or processes used by Mr. Steinberg in forming his opinion. Rather, Defendants challenge the factual underpinnings of two specific opinions offered by Mr. Steinweg and whether these facts are sufficient to support his eventual conclusions.

First, Defendants challenge Mr. Steinweg's conclusion that a directive issued by Ainsworth materially impaired Enginuity's ability to reach its adjusted EBITDA target for 2024. *See* Defs. Br., at 8. Plaintiff and Mr. Steinweg allege that Ainsworth imposed a minimum margin requirement wherein Enginuity was required to only bid projects with an expected profit margin

equal to or greater than the average backlog margin. *See* Defs. Resp. Br., at 14; Pl. Br., at 8. Mr. Steinweg states that this margin was 18%. *See id*. Defendants argue that Mr. Steinweg's use of the 18% figure is flawed because he obtained this figure from calculations performed by the Plaintiff, Mr. Mooney. *See* Defs. Br., at 8-9. Defendants argue his analysis is further flawed because he opines on bids made several months before the policy was communicated by email on October 2023. *See id.* at 8-9. Defendants argue that Mr. Steinweg addresses these earlier bids based solely on information provided by Mr. Mooney that the policy was first communicated orally in the summer of 2023. *See id.* at 8-9. In other words, Defendants' main dispute with this opinion in Mr. Steinweg's report is that it is based on assumptions and information from by Mr. Mooney.

Plaintiff disagrees and notes that testimony from employees of Ainsworth including Craig Stanford, Michael McHenry, and Joseph Voegele – as well as from Defendants' own expert – support the 18% margin figure. *See* Pl. Resp. Br., at 15-16. Plaintiff also identifies email communications which he claims support Mr. Steinweg's opinions. These include a draft email from Mr. Stanford in which he challenges certain claims by Plaintiff but does not express any concern with the 18% figure itself and an email from another Ainsworth employee, Michael McHenry which references the 18% margin requirement. *See id.* Plaintiff acknowledges that Mr. Steinweg does rely on information from Mr. Mooney but argues that Mr. Steinweg independently reviewed this information and that his opinions reflect his review of testimony from various individuals, email communications, and schedules and reports prepared by Defendants' employees. *See id.* at 16-17.

"As general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration." *Tuman v. Genesis Assocs.*, 935 F. Supp. 1375, 1385 (E.D. Pa. 1996) (quoting

*Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987). "A court should only preclude expert testimony when the sources on which the expert relies are of 'such little weight' that the expert's opinion is insupportable." *Id.*

Defendants are correct that "courts have found that opinion testimony is not reliable if it relies solely on the Plaintiff's own claims of harm at the exclusion of reliance upon scientific or technical information in order to test the Plaintiff's allegations." *Am. Power, LLC v. Speedco, Inc.*, No. 1:15–cv–2091, 2017 WL 4084060, at 8 (M.D. Pa. Jan. 17, 2017), *report and recommendation adopted*, No. 1:15-cv-2091, 2017 WL 4150463 (M.D. Pa. Aug. 24, 2017). However, while Mr. Steinweg does rely on evidence from Plaintiff, the Court agrees with Plaintiff that this is not the only evidence on which he relies. Mr. Steinweg's report considers, for example, email communications and testimony from other witnesses. He also purports to consider and opine on this information in accordance with accepted accounting and consulting methodology – a claim which has not been challenged by Defendants.

Defendants also challenge Mr. Mooney's opinions regarding how the loss from a failed project – known as the Mars Project – was allocated. The parties agree that Enginuity submitted a bid in 2023 that was flawed and resulted in Ainsworth recording losses of roughly $4,400,000. The Parties dispute whether, according to GAAP, this loss should all allocated to the 2023 financial statement or split between 2023 and 2024 because the entire amount of loss was not known or knowable by the end of February 2024. *See* Defs. Br., at 13. In his report, Mr. Steinweg opines that the loss was knowable by the end of February 2024 and therefore should have been allocated in its entirety on the 2023 financial report. *See id.*; ECF No. 91-3, at 10-11. Defendants argue that Mr. Steinweg's opinion does not "reasonably account for what was known or knowable when the 2023 financial statements were issued." *See* Defs. Br., at 14. Specifically, Defendants argue that

Mr. Steinweg ignores evidence which shows that the full losses were not known at the time including i) testimony from Mr. Mooney, ii) testimony from several Ainsworth employees, iii) contemporaneous communications and iv) contemporaneous internal documents created by Ainsworth financial staff. *See id.* at 14-18. By contrast, Defendants argue Mr. Steinweg relies on a signal screenshot in a single email to support his opinion. *See id.* at 18.

Plaintiff notes that experts from both parties agree the relevant accounting standard requires a contract loss to be recognized as soon as the loss becomes evident. *See* Pl. Resp. Br., at 22-23. Plaintiff argues that in addition to the email referenced by Defendants, Mr. Steinweg also reviewed deposition transcripts and Enginuity schedules which support his opinion that the loss was knowable by February 2024. *See id.* at 23. Plaintiff further argues that Defendants challenge Mr. Steinweg's application of the facts but do not challenge his methodology. *See id.* at 24.

As with Mr. Steinweg's opinion on the 18% margin, Plaintiff has shown that Mr. Steinweg has relied on sufficient evidence to support his opinion that the loss from the Mars Project was knowable by February 2024 and thus should be allocated on the 2023 financial statement. With both reliability challenges to Mr. Steinweg's opinions, Defendants argue "[t]he point is not that Defendants ask this Court to resolve the accounting dispute on the merits." *See* Defs. Br., at 18. But it is difficult to read their brief any other way. Defendants are not challenging the methods or processes used by Mr. Steinweg or even really arguing that his opinions are wholly unsupported by evidence. Instead, they take issue with the *sufficiency* of the evidence on which he relies and argue they have better support for their conclusions. This is not enough to preclude Mr. Steinweg's opinions and these arguments would be better addressed on cross-examination. *See Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. 579, 596 (1993) ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and

appropriate means of attacking shaky but admissible evidence.”). Therefore, the Court finds Mr. Steinweg’s testimony to be sufficient reliable.

**c. Fit**

Finally, courts are required to consider whether the expert’s testimony “fits” the case and will assist the trier of fact in understanding the evidence in dispute. *See UGI Sunbury LLC*, 949 F.3d at 832, 835. The Parties do not appear to meaningfully dispute whether Mr. Steinweg’s opinions would fit the case at hand. *See generally* Defs. Br.; *see also* Pl. Resp. Br, at 26 (“Defendants do not dispute that the reports and testimony are ‘fit’ to the matter.”). The Court agrees and thus will not preclude Mr. Steinweg’s opinions.

## V. CONCLUSION

For the foregoing reasons, the Court **DENIES** Defendants’ Motion. An appropriate Order follows.

BY THE COURT:

*/s/ John M. Gallagher*
JOHN M. GALLAGHER
United States District Court Judge